shall issue, will the clerk please call the next case? 5-17-0480, Richard Rednour v. The Workers' Compensation Commission. Counsel, you may proceed. Thank you, Your Honor. May it please the Court, my name is Stephen Treps, I represent the appellant in this matter, Richard Rednour. As this Court knows, the standard of review in a matter such as this is whether the decision of the lower court was against the map that's the weight of the evidence, and is there clearly an opposite, and is an opposite conclusion clearly apparent. This is a hernia causation case, and in this case, I do believe in the evidence is sufficient to show that a different opinion and a different conclusion was clearly apparent. So, what I'd like to do is talk a little bit about the facts pre-accident and post-accident. Oh, he had a pre-existing hernia, didn't he? He did. He had a pre-existing hernia. He had a hernia surgery back in 2001. The accident occurred on July 22, 2010. Three weeks prior to that, he goes to his doctor, his primary care physician, Dr. Pickett, on July 2, 2010. He was there chiefly for some sinus infections, but he also complains of a pain and a bulge in the right side of his abdomen. The doctor diagnoses him with a ventral hernia that is reducible. So, pre-accident, pre-July 22, 2010, we have a man with, albeit, a pre-existing hernia. He's doing heavy manual labor. He's putting in foundation walls. He's lifting 50, 60 pounds a day. He's working. And then on July 22, 2010, he's bending down to pick up a railroad tie like a football player in a three-point stance. He goes to pick this railroad tie up, and he testifies that he feels like a blowout sensation in his stomach and his abdomen area. So, that happens on July 22. July 26, he goes again back to his primary care physician, Dr. Pickett. Now, this time, the diagnosis has changed. It went from a reducible ventral hernia to an incarcerated hernia. Also, he then goes and sees the surgeon, Dr. Heffenrecker. Dr. Heffenrecker sees him and says, you've got an incarcerated ventral hernia. He goes to have surgery, and then when he has surgery, the operating physician also finds a bolidecternia, which is a hernia that herniated upward into his esophagus. And according to the operative report, it says it's, and I'll read it here, 24 centimeters approximately of his colon is up in his chest. I had to do some math on that. Now, before we go down off on that theory, I thought the evidence was clear that that herniation, that you just described, the boxlet, that hernia, could not be the result of trauma. It could be the result of trauma. We have two physicians here in this matter. Not according to Dr. Pruitt. Dr. Pruitt says it cannot be traumatic. Well, he says in most cases it's caused by a congenital birth defect, and in most cases they're found at birth. That's what he says. I do believe, though, and let me see if I can find it here. I do believe, though, he talks about in some cases, though, a bolidecternia can be caused by a traumatic incident. Well, it can be, but again, as we talked with him all morning, one expert says it can, one expert says it can't. I disagree with you. My reading of the record says that Pruitt explained that a bolidecternia is a congenital hernia which cannot be traumatically induced. Okay. Let me see if I can find it here in the record. Defect is a defect in the diaphragm, and by its definition is a birth defect that occurs during fetal development. All right. So that's the record. Okay. What I would say to that, though, is we have another physician who says that, yes, while it can be caused at birth, that it can also be traumatically induced. And in this case, I believe the evidence is quite clear that it happened as a traumatically induced bolidecternia. Correct. Again, the same thing. You've got an expert that says it, or you believe your interpretation is there's some expert testimony that it can develop later. You just recited Dr. Pruitt's that it can't. So the opinion's on both sides, correct? Well, yes. If we agree that Pruitt did say that, yes. But here's what tips it in favor of Dr. Meyer. Prior to this accident, prior to July 22, 2010, this man had a colon resection in June of 2009. He had diverticulitis, and they did a colon surgery on him. They didn't find any of that colon up in his chest. So he had a normal, well, not normal, but he had diverticulitis, and they resectioned his colon a year earlier, and it was not up in his chest. Now he has this accident, and he's got 10 inches of his colon up inside his diaphragm. So there's clearly a change in pathology here. And I will point you to the pages where it talks about that. Okay, so during the resection process, none was found, right? Right. Okay, so that's in a surgical note, right, by the surgeon? That is correct. No, the past surgeon. And he testified to that. Which doctor? The guy who said it wasn't there. So the prior surgeon, the doctor who did the colon surgery from June of 2009, we did not take his testimony, but we have his records where he talks about it. Okay, so he introduced the records and said there was no finding that the colon had migrated up into the stomach, right? That's correct. And so your argument is that we set that as true, we have a traumatic injury, and do you have any evidence to suggest that it moved up as a consequence of that action? What we have is a man who was working, and as soon as it happened, he felt like his stomach blew out, and he hasn't worked since. He stopped working that day. He said he felt like he lost his breath. So we have a colon surgery, a colon resection surgery a year earlier that didn't have any of his colon inside his diaphragm, and now when he goes with these new complaints to the surgeon after the accident, they're thinking he has a ventral incisional hernia. He had two hernias. He had the ventral incisional hernia from the colon surgery a year earlier. It popped out. And then when they go inside him, they find this bolidecterium. So really we're here on the injury of the bolidecterium. Well, I believe there's two hernias aggravated, or two hernias. One was caused by the accident, and one was aggravated by the accident. The bolidecterium was caused by the accident, and the ventral incisional hernia, the one that was found two weeks earlier, was aggravated by it. It was reducible three weeks earlier, and then it became incarcerated as a result of the accident. There's two hernias, and there's a change of pathology which suggests that this is a compensable case. What about this? Let me confront you with the conclusion, the commission's bottom line conclusion. At the time of the incident on July 22, 2010, the claimant sustained an increase in the symptoms of his preexisting hernia because he required surgery prior to July 22, 2010. It does not follow that the July 22, 2010 incident caused or contributed to the need for surgery. So it could have been an aggravating factor, but it didn't cause the need for surgery. How do you respond to that? Number one, I would disagree. It did cause the need for surgery. On July 2, three weeks prior to his work accident, he goes to the doctor and says, I got this pain on the right side. The doctor says it's a reducible ventral hernia. And as standard practice of a physician, he says on July 2, go see a surgeon. So the recommendation for surgery was made prior to the work accident, but it was an elective surgery. It became a mandatory and a need in an emergency surgery as a result of the work accident. He went from having a reducible hernia to an incarcerated hernia that needs to have surgery right away. And that's what happened in this case. Had it not been for that work accident, this man could still have that ventral reducible hernia that pops in and out and he could have surgery on an elective basis whenever he wants it. Who testified to that? No one, Your Honor. That's my argument. There's a problem, is there not? It's a bit of a problem. Well, it's not a problem in the sense that the evidence shows that the need for surgery became absolute when you had these work accidents. The reducible hernia became incarcerated and he needed surgery immediately. The ventral, or I'm sorry, the bolidect hernia was caused by the accident and it was also incarcerated and it needed surgery immediately. You say the bolidect hernia was caused by the accident. Dr. Pruitt said it wasn't. I say it was caused by the accident based on the evidence in the file and that he had this colon diverticulitis resection surgery a year earlier. None of his colon was up in his chest. It then was found up in his chest after the work accident. Was Pruitt, I believe it was Pruitt, was he made aware of that in his... I will... I assume he was deposed. He was deposed and he issued three reports in this manner. In the first two reports he found that his condition was work related. In the last report he found it wasn't. And then when I... You know, why was that? Because he missed... Because he was first advised that made aware of a Pickett's Note of July 2, 2010 He noted that 20 days before the July 22 incident he reported an abdominal wall hernia to his primary care physician. He had those records, Your Honor. I think the testimony from him was that he missed that note when he first issued those reports. And then when he saw that note he issued a third report. Exactly, and said he changed his opinion. And this time it was not causatively related.  Well, for purposes of this question I want you to assume that the same hernia that he complained about three weeks earlier that was reducible, could those work activities of lifting those heavy work railroad tires cause that hernia to be traumatically induced? And he said, could it have caused it? And he said, yes, it could have. So what we have here... Wait a minute, wait a minute. Unless I'm missing something, he consistently said that a ball deck hernia cannot be traumatically induced. Do you have a page in the record where he said it could be? I was talking about the ventral hernia. Oh, the ventral hernia was different. I'm sorry, yes. What I'm asking is, when he was deposed, were you aware of the physician's surgeon's notes that there was no hernia protruding into the stomach? Was I aware or was he aware? Well, you. You're asking questions of this guy. I was aware of it, Your Honor. Okay. Did you present that to him? I presented that to him in the form of my question in terms of whether it could be traumatically induced by the work accident. He said it could be. And that's on page... That it could be? 1342. We're not talking... The ventral hernia, I'm sorry. Let's stay with the ball deck hernia. Okay. I did not ask him about... Okay, thank you. I figured that was the answer. Thank you. Okay. So what we have though here is we have a man pre-work accident who had one hernia, the ventral hernia that reduced. After the work accident, he becomes incarcerated. His need for surgery became immediate and mandatory when he became incarcerated. And I know the court on the ball deck hernia, we have the upper GI, we have the colon diverticulitis surgery from a year before that didn't find anything of his colon up in his diaphragm. And then we have the surgeon for the work accident. He finds 10 inches of it up in his diaphragm. So the evidence here clearly points to the fact that this ball deck hernia, and I know both doctors said it can be mostly caused by birth, but it can also be traumatically induced. And that's what happened in this case. When you have a surgery a year before and nothing's there, and then you have a work accident, 10 inches of it is up in your diaphragm, I think the work accident caused it. You're making an inference. I think we understand the argument. All right. So therefore, Your Honors, I would ask that the court overturn the decision of the circuit court and remand this case back to the work comp for further findings on the nature and extent of this man's disability. Thank you, Counselor. You have time to reply. Counselor, you may respond. May it please the court. My name is Taylor Leonard, and I represent Metro Contract Services, the respondent in this claim. It is our position that the commission correctly held that there was no medical causation in this claim. One of the most important things here is the standard of review. Your standards manifest where we know what the standard of review is. So earlier you were questioning a lot about the evidence. Here there is the preexisting diagnosis. As a defense attorney, I very rarely get cases like this. This is a case where I have a preexisting diagnosis of the same thing, not a year earlier, not two years earlier, but 20 days before the alleged work accident. I have medical evidence that supports my position, deposition testimony that supports my position, and a petitioner that the arbitrator, the commission, and the circuit court all found had credibility problems. So in regards to the evidence, we all know that he had preexisting abdominal issues. Right. Past medical history was notable for a hernia in 2001 and the diverticulitis in 2009. He's not denying that. The central theme of his argument seems to be, yeah, he had a preexisting condition, but the symptom and pathology and everything else changed after the July 22nd accident. So what's your response to that specific point? So the pathology did not change. When he goes to Dr. Pickett on July 2nd, he is diagnosed with a reducible ventral hernia. He goes on the 25th, three days after the accident. Dr. Pickett does an examination. The hernia is in the same spot as it was before, and he states that it's a ventral hernia with possible incarceration. He doesn't say absolute. He says possible. The following day, he goes to BarnesCare. He is examined and diagnosed again with a reducible ventral hernia. The pathology did not change. At surgery, there was a diagnosis of an incarcerated hernia, but there's medical evidence and testimony from both physicians that confirm hernias can become incarcerated over time. So it wasn't the accident of July 22nd that caused the incarceration, as demonstrated by the Barnes records and to an extent Dr. Pickett's July 25th record, because he wasn't even sure if it was incarcerated. And that's what the Arboretum Commission concluded. It did not cause the need for surgery. Right. He also had surgery scheduled, or he had an evaluation scheduled with the surgeon before July 22nd. When you look at the records, he was referred out to a surgeon for general surgery and evaluation, and he goes to see Dr. Pickett on July 25th and mentions, hey, I have an evaluation scheduled with the surgeon on, I believe, August 10th or August 18th. So that was already pre-set up. It wasn't an elective surgery. That's how you treat hernias. Surgery was already scheduled? The evaluation was scheduled. The evaluation before the surgery. Right. He had already had the surgical referral. He was planning on going. So that's our position on that. That's why the pathology didn't change. What happened was time passed. As far as the boccellic, I don't know if I'm pronouncing that right, strange word, hernia, there is so much testimony from Dr. Pruitt that confirms that this is not a traumatically induced problem. It is congenital. And Dr. Myers admits that it's generally congenital. There's no evidence in any of the medical records that it was anything but congenital. I think that the assertion that the prior surgeries or GIs could have discovered this is unsupported. I also don't see any evidence that that's what they were looking for. After the 2009 diverticulitis and the resection, he was still having ongoing abdominal issues. He was having complaints of abdomen pain and burning through March and April of 2010. So that's not much time before the work accident. I also think... Is that symptomology associated with that type of hernia? I believe that Dr. Pruitt testifies that there are issues with the hernia. You can have, I think it's like heartburn issues, things like that. The hernia can be there, but it's going to cause symptoms. And a lot of times they are caught when they're children. We don't care about that. Well, we care about the answer to my question. Is there any evidence there that that symptomology that he was exposed to or experiencing is related to that type of hernia? That's relevant. That's important. I think Dr. Pruitt's position confirms that. I don't know that that was specifically asked. Asked and answered. Right. Would it be a good question, though? It would. It would have been. Thank you. Thank you. It would have been. But we have to confer that that's somehow related. Right. Okay. I think also it speaks volumes that Dr. Myers' cross-examination, he's presented with the July 2, 2010 record confirming this prior diagnosis of a hernia, and he says that it would have absolutely no impact on his opinion. It wouldn't have changed anything. I don't understand how he can look at that and say it wouldn't even have impact, because he's looking at that and then looking at Pickett's records on the 25th, looking at Barnes Care on the 26th where it's back to being an incarcerated hernia. How can that not have an effect on your opinion? So you're saying in so many words, even though he can point to some evidence in the record to support his position, an opposite conclusion to the one that the commission drew was not clearly apparent. Right. And there is evidence in the record to support the respondent's position. Exactly. Okay. The other thing I wanted to point out is just the issues with the petitioner's credibility. He was found to be not credible by the arbitrator and the commission. It's clear that he specifically left information out to all of the treatment providers. His own IME physician wasn't even aware of the priors, and he depended on it. But in short, I recently received this file.  I didn't write the brief. So I was a fresh set of eyes when I read this file in the last couple of weeks. And when I was reading it and evaluating everything and taking notes, it's a huge file, I looked through it and I came to the same conclusion that the arbitrator did, the commission, and the circuit court. There was no medical causation proven by... If you hadn't done that, would you have conceded? No, probably not. Is that an additional factor? We have to take into consideration the position of counsel in weighing the evidence? If you want to. But like you said earlier, the standard here is the manifest weight of the evidence, and I think that it's quickly apparent that the prior decisions are not against the manifest weight. And I would ask that you review the record as a whole and affirm the denial of benefits. Thank you. You did have a serious credibility problem, didn't you? Well, I will address that, Your Honor. I hope so. To address her, I think it was three main points. First of all, she said there was no change. I think there clearly was a change in pathology here. Why don't you address credibility? Okay, I will address credibility first. So, what she is stating is that they're assuming that Mr. Rednauer was not as truthful as he should have been when he went to Barnes Care because in his past medical history he didn't talk about having a prior hernia. Well, the issue was he did not believe he had ever experienced this kind of pain before. It wasn't a hernia that he's ever had like this. He did talk about his prior abdomen problems, but he didn't talk about having a prior hernia. And when he was asked about that at trial, he didn't consider this thing on the right side of his abdomen to be a problem or a cause or related to the work accident. So, I think instead of this being a credibility problem, it was more of a misunderstanding, number one. Number two, when she says there was no change in pathology, there clearly was one. It went from reducible to incarcerated, the ventral hernia. He goes in and she talks about the note of July 26 being a possible incarceration. Well, it can't be confirmed until they open the guy up, but it was the doctor's suspicion on his clinical examination that this was incarcerated because he couldn't push on it and it didn't deflate. So, he states ventral hernia with possible omectin incarceration. And then when it gets opened up a month later, they find that it is incarcerated. And then they find the bowel duct hernia as well, which was also incarcerated. So, there was a change in pathology that occurred after the work accident. And the last thing she talked about is Dr. Myers said that he didn't view the July 2 note and that didn't change his opinion one way or the other. Well, both doctors missed that note. Dr. Pruitt missed that note. That's why he wrote two reports saying that he found a causation in favor of the plaintiff. And Dr. Myers missed it as well. So, to say that Dr. Myers has a credibility issue or he didn't view all the evidence, they both had that note. They both missed it. Both of them thought causation lied with the plaintiff, in this case, the injured worker. The only difference is then when that happened, when Dr. Pruitt saw it, he then changed his opinion because it was preexisting. And Myers never commented at all about it. And Myers did comment on it. He did. About the July 2? On the July 2 note? Yeah. It's not in his report. It's in his testimony. It's on page 200 and 201 of the transcript, Your Honor. And he basically says, well, number one, I don't know if that's even the same hernia because the hernia that was found prior to that was on the right side. This is a ventral incisional hernia in the middle of his abdomen. So Dr. Myers said, I don't even know if that's the same hernia. But if it is, there clearly was a change in pathology. It went from reducible to... Wait a minute. The July 2, 2010 records and the July 26, 2010 records both say that the hernia was at the right middle abdomen. Both of them. So it's in the same place. It's in the same... There's a... On the ventral hernia, there's a question of whether that hernia was the same hernia or not. And when he complained about it, most medical reports called it right paramidline. So for purposes of today, I will assume that that hernia did preexist. And Dr. Myers, when he talked about it, he said, if that is the same hernia, because he said, I don't know if it is, but if it is, it went from being reducible to incarcerated. So there was a change in pathology and making the surgery a necessity and, therefore, it's work-related. I'm only talking about the location of the hernia. Right. July 2nd... July 2nd. So it goes in and he's diagnosed with a ventral hernia and Pickett noted that it was located in the, quote, right middle. Four days later, on the 26th, he returns to Pickett for, quote, a follow-up with increased pain in the ventral hernia, indicated that the claimant had pain at the right middle abdomen without palpable defect. No mention in the records of more than one bulge or that the ventral hernia was a different hernia than the one located on July 2nd. Location of the hernia was the same in both. Right. And I would agree with the ventral hernia. I do believe that it was aggravated by the work accident. Most of the evidence here points to the fact that it was the same hernia. Well, I'm just asking you about your statement that it was in a different place. I'm saying that's what Dr. Myers said. In his opinion, he said, I don't know if this is the same hernia because it looks to me like it might be in a different place because he's talking about right side. Except the medical records from Pickett suggest it's not in a different place and he was the examining physician. Correct. And then he said if it is the same hernia. Right. And then he said if it is the same hernia, if there was a change in pathology as a result of the work accident. So that's why I stated, Your Honor, for the ventral hernia appears to be aggravated by the work accident and the bolidecterium appeared to be caused by the work accident. Thank you, counsel, both of your time is up. Thank you both for your arguments in this matter Thank you, Your Honor.